| | |
|---|---|
| 1 | JAMES M. BIRKELUND, Bar No. 206328 |
| | Climate Change Law Foundation |
| 2 | 548 Market St., #11200 |
| | San Francisco, CA 94104 |
| 3 | james@climatechangelaw.org |
| | Tel: 415-602-6223; Fax: 415-789-4556 |
| 4 | |
| | *Attorney for Plaintiffs Climate Change Law* |
| 5 | *Foundation, Sierra Club, and Association of Irritated Residents* |
| 6 | MAYA GOLDEN-KRASNER, Bar No. 217557 |
| | The Center for Biological Diversity |
| 7 | P.O. Box 1476 |
| | La Canada Flintridge, CA 91012 |
| 8 | mgoldenkrasner@biologicaldiversity.org |
| | Tel: 213-215-3729; Fax: 510-844-7150 |
| 9 | |
| 10 | *Attorney for Plaintiff Center for Biological Diversity* |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ASSOCIATION OF IRRITATED RESIDENTS, SIERRA CLUB, and CLIMATE CHANGE LAW FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; CATHERINE MCCABE, in her official capacity as Acting Administrator of the United States Environmental Protection Agency; and ALEXIS STRAUSS, in her official capacity as Acting Regional Administrator of the United States Environmental Protection Agency,<br><br>Defendants. | Case No: 3:17-cv-720<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# INTRODUCTION

1. This is an action to compel the Administrator of the United States Environmental Protection Agency ("EPA" or "Administrator") to fulfill mandatory duties under the federal Clean Air Act to ensure that the citizens of California have adequate protections against air pollution from a natural gas plant in the McKittrick Oil Field in California.

2. The Chevron USA 7Z Steam Plant ("Natural Gas Plant") sought and received approval for an Authority to Construct permit / Certificate of Conformity ("Permit") from the San Joaquin Valley Air Pollution Control District ("Air District") pursuant the federal Clean Air Act. The Permit allows Chevron to construct eight new 85 MMBtu/hr natural gas fired steam generators (hereinafter, the "Project"). Each MMBtu equals one million British Thermal Units ("BTU"), which is roughly equivalent to a thousand cubic meters of natural gas. The new generators therefore will utilize roughly 85,000 cubic meters of natural gas an hour.

3. Allowing the Project to move forward will significantly increase harmful air pollution that will exacerbate the poor air quality and respiratory illnesses that plague San Joaquin Valley communities already unfairly burdened with industrial pollution, and will contribute to climate change impacts.

4. The Permit was issued pursuant to Title V of the Clean Air Act and is a modification of the Natural Gas Plant's existing federal Title V operating permit. As a modification of a Title V permit, the Permit was required to be submitted to EPA for a 45-day review period before it became final. 42 U.S.C. §§ 7661d(a)(1), (b)(1). EPA did not object to the Permit during the 45-day review period.

5. Therefore, the Association of Irritated Residents ("AIR"), Center for Biological Diversity (the "Center"), Sierra Club, and Climate Change Law Foundation (collectively, "Plaintiffs") filed a petition ("Petition") with EPA on July 7, 2016, requesting that EPA object to the Air District's proposed Permit for the Natural Gas Plant. *See* 42 U.S.C. § 7661d(b)(2) (authorizing such petitions).

6. Title V of the Clean Air Act establishes a mandatory 60-day deadline for EPA to grant or deny a citizen petition for an objection to a Title V permit, modification, or renewal. *Id*.

7. Although more than 60 days have passed, the EPA Administrator has not acted on the Petition. The EPA Administrator has therefore failed to complete her non-discretionary duty and is in violation of the Clean Air Act. Plaintiffs seek a declaration stating that the Administrator is in violation of the Act and an order compelling the Administrator to grant or deny the Petition.

## JURISDICTION, NOTICE, AND VENUE

8. The instant action arises under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1331 and 1361. The relief requested by Plaintiffs is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361. 42 U.S.C. § 7604(d) authorizes this Court to award Plaintiffs their costs and attorneys' fees.

9. In accordance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Parts 54.2 and 54.3, Plaintiffs notified the Administrator of the violations alleged herein, and of Plaintiffs' intent to initiate the present action. This notice was provided via certified mail by letter dated October 24, 2016 and addressed to the Administrator. More than 60 days have passed since notice was served, and the violation complained of is continuing.

10. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(e). Defendant EPA resides in this judicial district. EPA Region 9, which is responsible for implementation and enforcement of the Clean Air Act within California, is headquartered in San Francisco. Climate Change Law Foundation, the Center for Biological Diversity, and Sierra Club have offices in this judicial district. This civil action is brought against an officer of the United States acting in his or her official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California.

## PARTIES

11. Plaintiff Association of Irritated Residents is a California non-profit corporation based in Kern County. AIR formed in 2001 to advocate for clean air and environmental justice in San Joaquin Valley communities. AIR has several dozen members who reside in Kern, Tulare, Kings, Fresno, and Stanislaus Counties. AIR members, through themselves, their families, and

1 friends, have direct experience with the many health impacts that arise from the type of pollution
2 emissions associated with this Project.

3    12.   Plaintiff Center for Biological Diversity is a non-profit corporation with offices in
4 Oakland, Los Angeles, and elsewhere throughout California and the United States. The Center is
5 actively involved in environmental protection issues throughout California and North America and
6 has over 47,000 members, including many throughout California, including in the Northern
7 District of California and in Kern County. The Center's mission includes protecting and restoring
8 habitat and populations of imperiled species, reducing greenhouse gas pollution to preserve a safe
9 climate, and protecting air quality, water quality, and public health. The Center's members and
10 staff include individuals who regularly live, work, recreate and visit Kern County.

11   13.   Plaintiff Climate Change Law Foundation ("CCLF") is a California non-profit
12 corporation based in San Francisco. CCLF's core mission is to address climate change and related
13 environmental problems through legal advocacy. The organization engages in legal and policy
14 matters that include climate change, alternative energy, air quality, and environmental and natural
15 resources law. CCLF has members who reside in and regularly use, and intend to continue to use,
16 areas in Kern County and surrounding regions that will be affected by the Project and emissions of
17 pollution it will generate.

18   14.   Plaintiff Sierra Club is a national nonprofit organization of approximately 695,000
19 members. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the
20 earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to
21 educating and encouraging humanity to protect and restore the quality of the natural and human
22 environment; and to using all lawful means to carry out these objectives. Sierra Club and its
23 members are greatly concerned about the effect of air pollution on human health and the
24 environment.  Sierra Club has approximately 600-700 members in Kern County.

25   15.   Plaintiffs are "persons" within the meaning of 42 U.S.C. § 7602(e). As such,
26 Plaintiffs may commence a civil action under 42 U.S.C. § 7604(a).

27   16.   Plaintiffs' members live, work, recreate and conduct other activities in areas where
28 their health and welfare are adversely affected or threatened by air pollution caused by the Project.

17. By this action, Plaintiffs seek to protect the health, welfare, and economic interests of their members and the general public. Plaintiffs' members and staff have an interest in their health and well-being, and in the health and well-being of others, including the residents of Kern County. The acts and omissions of EPA complained of herein have caused and continue to cause injury to Plaintiffs and their members by authorizing modifications to the Natural Gas Plant that will significantly increase harmful air pollution from the facility and impair or threaten members' and the public's health and welfare, as well as recreational, aesthetic, and environmental interests.

18. Plaintiffs' interests and their members' interests have been, are being, and will continue to be harmed by EPA's failure to act on the Petition to object to the Permit for the Project. Plaintiffs and their members have a substantial interest in ensuring that EPA complies with federal law, including the requirements of the Clean Air Act.

19. The acts and omissions of EPA alleged herein further deprive Petitioners and their members of procedural rights and protections to which they are entitled. During the permitting process for the Project, Petitioners provided comments critical of the Permit's conditions. Subsequently, Petitioners petitioned EPA to object to the issuance of the Permit. The Clean Air Act gives Petitioners a procedural right to a timely decision on their Petition. EPA's failure to take action on the Petition prevents Petitioners and their members from challenging an unfavorable EPA decision or from benefiting from a favorable decision on the Petition.

20. For all the foregoing reasons, the failures complained of herein cause Plaintiffs and their members injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

21. Defendant EPA is the federal agency charged with implementation of the Clean Air Act.

22. Defendant Catherine McCabe is the Acting Administrator of EPA, and is responsible for implementation and enforcement of the Clean Air Act. Defendant McCabe is sued in her official capacity, and officially resides in Washington, D.C.

23. Defendant Alexis Strauss is the Acting Regional Administrator of EPA for the Pacific Southwest (Region 9), and is responsible for implementation and enforcement of the Clean

Air Act within California. Defendant Strauss is sued in her official capacity, and officially resides in San Francisco, California.

## LEGAL BACKGROUND

24. The Clean Air Act establishes a comprehensive scheme "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program—an operating permit program that applies to all major sources of air pollution. *See* 42 U.S.C. §§ 7661-7661f.

25. Major sources of air pollution must obtain a valid Title V operating permit, which records all of the air pollution control requirements that apply to a major source of air pollution. Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. 42 U.S.C. § 7661a(a), 7661c(a).

26. A significant modification to an existing Title V operating permit must meet the requirements that apply to issuance of a Title V operating Permit. *See* U.S.C. § 7661a(a); 40 C.F.R. § 70.7(e), (h).

27. The Clean Air Act provides that the Administrator may approve state programs to administer the Title V permitting program with respect to sources within their borders. *See* 42 U.S.C. § 7661a(d). The Administrator granted final approval to 34 district Title V programs in California, including for the San Joaquin Valley Air Pollution Control District, in 2003. *See* 68 Fed. Reg. 65,637 (Nov. 21, 2003). The California Air Resources Board is responsible for monitoring the activity of local air districts.

28. Before a state or local district with an approved Title V permit program can issue a Title V permit or significant modification to a Title V permit, the state or district must forward the proposed Title V permit to EPA. 42 U.S.C. § 7661d(a)(1); 40 C.F.R. § 70.8(a). EPA then has 45 days to review the proposed permit. 42 U.S.C. § 7661d(b)(1).

29. Air District Rule 2520 allows the Air District to issue a "Certificate of Conformity" as a means of processing a significant modification to a Title V permit. *See* San Joaquin Valley Air

Pollution Control District Rule 2520 §§ 3.7, 5.3.3; *see also,* San Joaquin Valley Air Pollution Control District Rule 2201 § 5.9.

30. A Certificate of Conformity prompts EPA review of the proposed Title V permit changes before construction or modification of the permitted facility and states that procedural requirements substantially equivalent to those of 40 C.F.R. sections 70.6 (covering permit content); 70.7 (covering permit issuance and revision); and, 70.8 (covering permit review by EPA) have been followed. Rule 2520 § 3.7. EPA has 45 days to review a Certificate of Conformity and underlying proposed changes to a Title V facility. *Id*. § 11.3.7.

31. Pursuant to a Certificate of Conformity, modifications to a Title V permit may subsequently be processed as an administrative amendment to the permit without additional EPA review or public participation. *Id*. §§ 3.2, 3.7, 6.4.

32. EPA must object to the issuance of a permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act. 42 U.S.C. § 7661d(b)(1); 40 C.F.R. § 70.8(c).

33. If EPA objects to a permit, the permitting authority may not issue the permit unless it is revised. 42 U.S.C. § 7661d(b)(3). If the permitting authority has issued a permit prior to receipt of an objection by the Administrator, the Administrator shall modify, terminate, or revoke such permit. *Id.*

34. After EPA's 45-day review period expires, "any person may petition the Administrator within 60 days" to object to the proposed permit. 42 U.S.C. § 7661d(b)(2); 40 C.F.R. § 70.8(d); *see also,* San Joaquin Valley Air Pollution Control District Rule 2201 § 5.9.1.7; Rule 2520 § 11.3.7.

35. The Clean Air Act requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2).

36. If EPA fails to comply with a non-discretionary duty, such as acting on a petition within the statutorily mandated timeframe, the Clean Air Act allows any person to bring suit to compel EPA to perform its duty. 42 U.S.C. § 7604(a).

**FACTS**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF 6

37. The Chevron USA – 7Z Steam Plant in the McKittrick Oil Field is a major stationary source of air pollution located in western Kern County, California.

38. The Natural Gas Plant is subject to an existing Title V permit, issued on April 25, 2001.

39. On January 15, 2015, Chevron applied to the Air District for an Authority to Construct / Certificate of Conformity to modify the Natural Gas Plant and construct eight new 85 MMBtu/hr natural gas fired steam generators.

40. The public health implications of the Project are significant. The Project would result in the release of harmful air pollution, including significant levels of oxides of nitrogen oxides (NOx), carbon monoxide (CO), volatile organic compounds (VOCs), particulate matter (PM10) and sulfur oxides (SOx). NOx and VOCs are ozone "precursors" that react in the presence of sunlight to create ground-level ozone (or "smog").

41. Smog causes severe public health and related effects, which may include chronic respiratory illnesses, emergency room visits, premature death, missed school days, medical bills, lost wages, and reduced worker productivity.

**Procedural Background**

42. The Air District published notice of its preliminary decision on the Permit on May 6, 2016 ("Preliminary Decision"), triggering a 30-day comment period on the Preliminary Decision.

43. Petitioners submitted comments objecting to the proposed Permit on grounds that the proposed emissions reduction credit for the Project was invalid to the Air District during the comment period, on June 9, 2016.

44. The Air District determined as part of its Preliminary Decision that the proposed Project "modification can be classified as a significant Title V modification pursuant to Rule 2520, and can be processed with a Certificate of Conformity (COC)."

45. Processing the modification with a Certificate of Conformity allows Chevron to amend its Title V Permit for the Natural Gas Plant administratively under the theory that the procedural requirements for the Permit would be "substantially equivalent" to those set forth in 40

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF 7

C.F.R §§ 70.7 and 70.8. District Rule 2520 §§ 3.7, 5.3.3., 11.3. The Air District explicitly stated in its Preliminary Decision that, "[s]ince the facility has specifically requested that this project be processed [with a Certificate of Conformity"], the 45-day EPA comment period will be satisfied prior to the issuance of the Authority to Construct."[1]

46. EPA did not raise objections to the Permit during the 45-day review period.

47. On July 7, 2016, Plaintiffs filed a petition requesting that the Administrator object to the issuance of the Permit on grounds that the Permit relies on invalid emissions reduction credits. The Petition was timely filed within 60 days following the conclusion of EPA's review period. *See* 42 U.S.C. § 7661d(b)(2).

48. The Petition was based on objections raised during the public comment period for the proposed permit or on grounds that arose subsequent to the public comment period, in accordance with 42 U.S.C. § 7661d(b)(2) and 40 C.F.R §§ 70.8(d), 70.7(h).

49. EPA had 60 days, until September 6, 2016, to grant or deny the Petition. 42 U.S.C. § 7661d(b)(2). As of the date of filing of this complaint, EPA has not yet granted or denied the petition.

50. The Air District issued the Authority to Construct/Certificate of Conformity for the Project on October 6, 2016.

51. By letter dated October 24, 2016, Plaintiffs provided the Administrator with written notice of their intent to sue for EPA's failure to take action on the Petition. The Administrator received this notice letter via certified mail on October 31, 2016. More than 60 days have elapsed since Plaintiffs gave notice, and EPA remains in violation of the law.

**CLAIM FOR RELIEF**
**(Failure to Grant or Deny Petition)**

52. Plaintiffs hereby incorporate all previous paragraphs by reference herein.

---

[1] Proposed Decision, http://www.valleyair.org/notices/Docs/2016/05-09-16_(S-1144548)/S-1144548.pdf (last accessed February 8, 2017).

53. The Administrator had a mandatory duty to grant or deny the Petition within 60 days after it was filed. *See* 42 U.S.C. § 7661d(b)(2).

///

54. It has been more than 60 days since the Administrator received the Petition requesting that EPA object to the Permit for the Natural Gas Plant.

55. Defendants' failure to timely complete this duty constitutes failure to perform an act or duty that is not discretionary within the meaning of 42 U.S.C. § 7604(a)(2).

56. Defendants' failure to perform this nondiscretionary act under the Clean Air Act is ongoing. Plaintiffs are informed and believe that the omissions complained of herein will continue unless enjoined by order of this Court.

57. Accordingly, Plaintiffs are entitled to an order from this Court declaring that Defendants have failed to perform the above-referenced nondiscretionary duty, and directing Defendants to perform such duty immediately.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court:

(A) Declare that Defendants' failure to act as complained of herein constitutes a failure to perform a nondiscretionary duty required by 42 U.S.C. § 7661d(b)(2), and within the meaning of 42 U.S.C. § 7604(a)(2);

(B) Issue an order compelling the Administrator to perform her mandatory duty to grant or deny the Petition, by an expeditious certain date;

(C) Retain jurisdiction over this action to ensure compliance with the Court's orders;

(D) Award Plaintiffs their reasonable costs of litigation, including attorneys' fees, pursuant to 42 U.S.C. § 7604(d); and

(E) Grant such other relief as the Court deems just and proper.

///

///

///

///

DATED: February 13, 2017			Respectfully submitted,


			 /s/  James M. Birkelund
			JAMES M. BIRKELUND, Cal. Bar No.206328
			Climate Change Law Foundation
			548 Market St., #11200
			San Francisco, CA 94104
			james@climatechangelaw.org
			Tel: 415-602-6223

			*Attorney for Plaintiffs Climate Change Law Foundation, Sierra Club, and Association of Irritated Residents*



			  /s/   Maya Golden-Krasner
			MAYA GOLDEN-KRASNER, Cal. Bar No. 217557
			The Center for Biological Diversity
			P.O. Box 1476
			La Canada Flintridge, CA 91012
			mgoldenkrasner@biologicaldiversity.org
			Tel: 213-215-3729; Fax: 510-844-7150

			*Attorney for Plaintiff Center for Biological Diversity*